Judge Graves, Judge Hickinson, Judge Wilson, Larry Watts, the Jose Amstutz is 45, 5 children, 3 are special needs, his ex-wife had a, was 34, or is 34, and they got divorced. Every time he filed for divorce, she realized that his 20 year career in law enforcement would be placed at stake and her retirement future might be jeopardized. Excuse me. The case was dismissed on 12B6. There are basically two issues. Number one, did I properly notify EEOC and opposing counsel or the appellees that age was an issue? ADEA is the only way that age discrimination can be raised in this court or in the federal courts. The only reason the box for age is on the EEOC chart of discrimination is because of ADEA. When the box was checked for age and when the date of birth was put on there, and when he challenged the fairness of his discipline, age was subject to prompting a reasonable investigation by EEOC. But the fact allegations then, I know they were withdrawn in the November 1st hearing, but the fact allegations were about sex discrimination. Down to the bottom, yes. Yeah. There's a small box. Right. So all the allegations were about that. Well, not necessarily. It was, he was, you understand, he was prohibited from going back onto the property or talking to personnel. I know, but I'm just back to this point that you're pressing, which is EEOC would discern they had to investigate into an allegation of age discrimination, and yet when they read the facts accompanying the boxes, it's all about sex discrimination. So I guess, let me ask the question I usually ask, which, what case do you have that just checking the box is sufficient to trigger the investigation? We didn't just, well, first, the only way you can get, we didn't just check the box. Number one, he had all the information he had without getting into the mindset of the constable. Well, he had the DOB, his date of birth. They could have discerned his age. That's right. He was terminated unfairly. I know, but did he actually elucidate the facts that a younger person was hired instead of him? We didn't know that. You didn't, okay. But back, just back to my question. Do you have a case that just says it's enough, this is reasonable, they should have done the investigation? Because you cited only Pacheco, but there we affirm the dismissal. No, no. Okay. But you also have the ability to interpret liberally.  And you have the opportunity to even as a court of appeals to modify by your interpreter. There's no case right on point, but you think liberal interpretation, they knew enough. I think that a reasonable investigation would have found, but besides that we're talking about an affirmative defense. But I think that a reasonable investigation would have found why was he terminated? Why was he suspended? Now, we know what they told us. That's part of the property issue. But I think ADA is there. I think age discrimination is there. The judge said that it was not pled. Age discrimination was in the first pleaded on May the 15th. It was there. Judge said that it didn't show up until the first amended. That's wrong. It was there on the first. I thought you were agreeing it didn't show up later, but that related back to the first. No, I say that it all related. It was always there. And there was in the way that Julian was a state case was argued dealing with that. I felt like that there might have been a relation back even to the charge of discrimination. I thought that there might be a total reading of the whole package. I do think age discrimination was there. And I think it would not be an implausible interpretation to say that a reasonable investigation would have found, would have been able to go in and do what we couldn't do. And that's fine. What do you point to in the original complaint for your contention that age discrimination was in that original complaint? What do you point to in the complaint in support of that other than his date of birth? The original complaint. Yeah, your original complaint filed in court. That we filed in 515. I think that's ROA 8. All right. What does it say? I don't remember exactly. But it says age discrimination that he was qualified. He was over the age of 40. And I don't have that, unfortunately, committed to memory at this time. But judge it's there. It's also in the First Amendment. And it's also in the Second Amendment. Now, I was, I drafted the Second Amendment. And we, by that time, I had the ability to find out information about the replacement. I did that because of a case that we had prevailed on. But I think ADA is there. The second issue is policymaker. Was or is Constable Trevino a policymaker? According to Texas local government code 151-001-004, the commissioner's court can't do anything except get the name of the people that she wants to hire, the amount she wants to pay them, and her sworn statement that they're needed. They get the name for the check, the amount to pay them, and that's it. Any type of training, any type of supervision, any type of discipline is hers. You have evidence of that because in the process, the ‑‑ But would you, this is on the 1983? I'm sorry? This is on the 1983? Yes, it is yours. I mean, if she has the authority, but it is discretionary, right? We're in an at‑will state, and therefore ‑‑ Was it an at ‑‑ no. Not an at‑will state. Not an at‑will. It is an at‑will state, but it's not discretionary. The statute says that the commissioner's court butts out. They don't have any authority. Right. It's all hers. Right, but it's her discretion to discipline or terminate. So that gets to what you started out by saying.  You were going to get to the property right issue. Yes, yes. And you know, you emphasized Perry. They cite our case, Stern. Are you familiar with that? I am, and I'm familiar with Perry. Mr. Perry is here with us today. Okay, but I guess I'm more focused on our Stern case, which does seem to stand for the proposition that in an at‑will state, he wouldn't have a property right to his employment. I didn't see you respond to that in your reply brief. Do you have a response? She's a policymaker. She can change the terms. There are more than ‑‑ in an at‑will state, unfortunately, I made the bad law for at‑will in Texas in Brown v. Board. So, I mean Brown v. Hospital District. But you can have a modification of at‑will within the at‑will context. Okay. That's all over Texas law. Mostly firestone, tire, rubber cases. But in this particular case, she changed that. The state law changed that. She changed that when she went in to, for example, to change the terms of separation. When she changed the terms of separation from dishonorable to general. General is defined by statute as not being at‑will or reduction in force. By statute. That's in the plea deal. We also have a stipulation by counsel that there was a property interest. And that stipulation was at the SOA hearing. I thought she changed it to general because the ALJ made the conclusion of law that the facts only supported an honorable discharge. That's right. Yeah, okay. But in the plea deal, that I recite a statement that was made by counsel for the appellees, that's on page of the second amendment complaint, 20 of 27. It says, counsel said, given the findings of the disciplinary investigation, petitioner was terminated from his employment on July 20, 2020, following the requirements of Texas Occupations Code Constable Precinct 6. And it goes on. I think that constitutes an admission to the SOA judge. The point is that in terms of property, he was told from the get‑go you're being suspended pending an investigation into the assault charges. He was told that all the way through. They then changed the game on him after they found that he was not in a impermissible post hoc reason. Right, but just because you're told you're going to get an investigation, how does that fit you into Perry v. Sindeman, right, where the whole thing was a de facto employment entitlement? See what I mean? There's a big distinction, I would think, between people saying you're going to get an investigation. He did, and he was vindicated. Well, you have a state statute in Texas Government Code 614.023, and that creates the property interest according to the Perry case. Perry, you agree, wouldn't you agree, that that was a de facto employment entitlement in a university context? In other words, the facts there was they actually were being guaranteed their job. I thought that's how ‑‑ 614 wasn't adopted by the Ailey School District until after Perry was tried and ruled on by the 14th. I may be missing the point, Judge Higgins. No, go ahead. So I think that on the policymaker, you have the Texas Government Code 151.001 through 1004, and that says hands off after the deputy is hired by the constable, or by the guy, excuse me. I didn't mean to tear up your property. The ‑‑ I think in terms of the property interest, he clearly had a reduction. You can have ‑‑ if you look at Senderman v. Perry going back to 1972, you know, there were two cases that came down back to back on the Supreme Court, Roth and Perry. Perry says you can have an agreement in the Webster case v. City of Houston where you had a practice that dealt with the Bonnell issue. You don't have to have necessarily the context of that will restricting the ability to make agreements within in that context. That would be sort of a futile, and I think foolish, restriction of ability of the constable to deal with her deputy constables. She has absolute authority. Are there any questions? I apologize, by the way, for my breathlessness. You've been very clear. Thank you. That's basically what I have to say at this point. I think that we had ADEA, age discrimination. I think we had a property interest, and I think we had a policy. And by the way, on the Bonnell, we put also in there the county. Your time has expired. It has. Thank you, Judge Graves.  Ms. Sosa? Yes. You may proceed. Thank you, Your Honors. Good morning. May I please the Court? Susana Sosa representing Appellees, Harris County, and Constable Sylvia Trevino. This is an appeal from the District Court's granting of Appellees' respective motion to dismiss filed under Rule 12b-6 of the Federal Rural Civil Procedures. Several of Appellant's arguments argued today and also included in his brief filed before this Court are not contained in Appellant's Second Amendment complaint, which is an operative complaint that was a subject of Appellee's motion to dismiss. I will be addressing Appellant's claim under the ADEA first, and then Appellant's claim under 42 U.S.C. section 1983. The District Court properly dismissed Appellant's claim under the ADEA because Appellant failed to exhaust his administrative remedies and because Appellant failed to timely file his claim. Appellant did not oppose the timeliness argument in the District Court. Therefore, he has abandoned and waived those claims. In relation to Appellant's failure to exhaust his administrative remedies, as it is the precedent in this Court, a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EOC every time they raise a claim under the ADEA. But here he checked the box. You heard counsel opposite's argument that the box was checked about age, and that could only have meant an ADEA claim. So why couldn't the investigation have yielded enough to support the claim, or why wouldn't it be a logical outgrowth of that? Yes, as the record shows, he did checkmark age. However, the factual statement of the EOC charge is devoid of any age discrimination allegations, as the District Court found. Now, as it is the precedent in this Court, courts may construe an EOC charge complaint broadly, as this Court has consistently held. However, that construction can only be in terms of the administrative EOC investigation that can reasonably be expected to grow out of the charge. I guess, is there really no case law in this? You would think you would have lots of people that would just check a box and do nothing else. Because I was asking him to see if case law that supports that's enough. Do you have case law that suggests it's not enough? No, Your Honor. I found no case law when I was briefing this case before this Court. So you would rely on the Pacheco case? Or, I mean, that's his focus. And yet, there we oddly said we don't require people to check a certain box, right? So here is the rule you're asking us to do, saying even if you do check the box, it's not enough? The Pacheco case, that is correct. Just because he checkmarked H, that doesn't mean that the courts should consider H. I mean, Appellant is simply asking this Court to make an assumption just because he checkmarked H. And when the factual statement has been the ruling of this Court consistently, it's really what matters in an EOC investigation and what courts should consider in an ADA claim. Well, based on what he did check, the EEOC conducted an investigation? He pled that the EEOC, he actually attached a HEOC charge, as the record shows, but there is no pleading. Do we know what the EEOC did as a result of his filing the charge with the EEOC? The EEOC issued a right to sue letter, Your Honor. So we don't know whether or not they conducted an investigation? He did not plead anything in his second amendment complaint in relation to it. I guess what I'm getting at is what would the EEOC have done differently if he had put anything else on there regarding H discrimination? He checked the box regarding H discrimination. He's required to file a charge with the EEOC before he can proceed on his claims. He did that, and he checked that box. So for you to claim he failed to exhaust his administrative remedies, I guess my question is what else could he have done? And I know what you're going to say, he could have put some facts in about H discrimination, but he checked the box to say I'm bringing a claim also for H discrimination. And without knowing what else the EEOC did, because I guess we don't know, we don't know whether or not they would have done anything any different from what they did already, do we? No. Everything that is contained in the factual statement is basically what the EEOC, I would assume, will have. And they gave him a right to sue letter. That is correct, Your Honor. Which they give whether they find cause to believe that there was discrimination or whether they make no finding. They give a right to sue letter. Isn't that right? Yes. All right. This court actually most recently, as briefed in a police brief, confirmed this court's precedent that in Aguironde v. Thames Industrial Services Incorporated in November of 2024, that the courts can only make that broad deconstruction that can reasonably be expected to grow out of the charge of discrimination. As the record shows, no H discrimination allegation can reasonably be expected to grow out of appellant EEOC charge of discrimination, which is record number 13 and 312. For this reason, the district court properly dismissed appellant's claims brought under the ADA. In relation to appellant's claim under 42 U.S.C. section 1983, the district court- Before you get to that, back on the timeliness, your argument is even if there were exhaustion, he didn't file in a timely manner, and tied to that is a waiver, you heard him today say he thinks both it was originally in the first complaint, but even if it wasn't, the second related back. In relation to his relation back argument, which he actually argued for the first time before this court, as the district court found, there was no response to that argument. So he did not raise the relation back argument in the district court. So it should not be before this court. But do you have an opinion, had it been preserved, he would be right, correct? In other words, if he had preserved it and made the relation back, is there a law that says you can't relate back? He generally mentioned H in his original complaint, which is not the subject of the motion to dismiss. And that was not- appellees were not served with that original complaint. Appellees were served with the first amendment complaint. Okay. Well, go ahead, go ahead. Okay. Thank you, Your Honor. Okay, so in relation to appellant's claim under 42 U.S.C. section 1983, the district court properly dismissed appellant's claim because appellant simply did not please, did not plead any facts in his second amendment complaint that would support his contention that he had a property interest protected by law or contract in his job. So without proper pleading of a property interest protected by law or contract, further analysis of section 1983 simply is futile. So as this court, and as actually briefed in an appellee's brief, as this court ruled in Martin v. Memorial Hospital at Gulfport, there is no property right in continued employment in Texas unless there are policies enacted to allow employment dismissal under just cause or certain circumstances. Now, the second amendment complaint, appellant generally states that he has a property interest, that he had a property interest in his job, and that he had a tangible interest. But there are no facts supporting, no factual allegations in his second amendment complaint. Now, appellant, my colleague argued before this court, and also is somehow included in his second amendment complaint, that he mentioned the F-5 procedure before SOA, which is actually a post-employment administrative procedure that has nothing to do with his employment. I mean, it's an administrative procedure in relation to the F-5. Yes, he mentions that counsel during that hearing made a statement, which is actually, if we look at the record, as cited again in the second amendment complaint, which is the subject of the motion to dismiss, the reading, and that is record number 206, states, given the findings of the disciplinary investigation, petitioner was terminated from his employment. Again, this court has consistently held, and as cited in Appellee's brief in Stem v. Gomez, an internal investigation does not create a property right. Again, appellant is asking this court to make an assumption, to make an assumption that he had a protected interest in his job when there is no factual allegations contained in the second amended complaint. What would be a sufficient factual allegation to get him in the world of Perry v. Sinderman? What would he have to allege? Perry v. Sinderman was an appeal in relation to a motion for summary judgment. The court found that there was a fact issue in relation to appellant in that case, mentioning that there was a faculty book stating that he had, you know, that there was some kind of statement where faculty members had a, somehow an understanding of continued employment unless, you know, if they follow policies and things of that nature. I guess, but obviously what he's saying here is sort of in the orbit of that would be your superior saying, hey, you'll keep this job if the investigation goes forward and you're vindicated. Is your answer factually, well, he wasn't vindicated, all it did was change it to a general honorable discharge, but it didn't dispute the discharge itself? Is that your answer? Or is it no, Perry v. Sinderman is really restricted to the type of office manual situation. It's not what people say orally. He, well, appellant argued Perry v. Sinderman in this, before this court. He did not mention any factual statement, any factual allegation related or making it any close, anyhow closer to Perry v. Sinderman in the second amendment complaint. There are no facts that would support, you know, his contention. But nevertheless, to answer your question, Your Honor. I thought he did allege that the superior said you've got an investigation coming. He alleged that in his response. He alleged that before this court. It's not contained in the second amendment complaint. Now, what he cited in his brief before this court to record number 105, that is actually not the second amendment complaint. That is actually appellant's response to appellee's respective motion to dismiss the first amendment complaint, not the second amendment complaint. In sum, since appellant failed to plead that he had a constitutional protected liberty or interest, then analysis protected by law, then analysis under section 1983 simply ends here. For this reason, appellee respectfully asks this court to affirm the district court's decision dismissing this case with prejudice. Thank you, Your Honor. All right. Thank you, counsel. Rebuttal. Yes, Your Honor. In the answer to your question a moment ago, the original complaint says in paragraph E, RLA 8, plaintiff is an employee within meaning of Title VII and belongs to a class protected under the statutory, under the statute namely male and of a certain age. That was in there as paragraph E on RLA 8. Secondly, the Holowicki case, which I think is significant, gives you the discretion to interpret liberally the charge of discrimination. Secondly. So in regards to that allegation in the complaint, it's the mention of his age, and that alone that you believe is sufficient to establish that he can proceed on a claim of age discrimination. Well, at one point. The statement of his age. At one point in time, 8A said make it plain and simple. That, of course, is in tension with Twombly. But the point is that age was clear, I think, enough to raise the issue. Then it was related back through the second amended complaint on November 1st of 2023. By that time, I had a picture of the replacement. I knew who the replacement was. And I knew basically how old he was, that he was a youngster. Did I answer your question? No, probably not. But I'm trying. I'm trying. You may proceed. All right. Thank you, sir. In terms of the misconduct, the—oh, by the way, I misspoke, Judge Higginson. When you said Perry a moment ago, I was thinking about Turner v. Perry, which states in Texas from the 14th Court of Appeals, a 1983 case, that the 614 Texas Government Code creates a property interest for law enforcement officers in their job as long as they get notice in writing of a complaint, that complaint has been investigated, and the complaint doesn't show the misconduct. Now, there was no investigation by Precinct 6. Number two, the administrative law judge, Judge Baker, found that my client didn't do anything wrong. He didn't do anything wrong. He had— The conclusion was that your client didn't engage in misconduct, quote, that would support a general discharge. He wasn't saying he did nothing wrong. My client didn't. Under 614, he has to be charged with a complaint of having done something wrong. That—Texas sets that as a statutory for property interest, and in fact says it's a property interest for law enforcement, firefighters, and EMS. So here's what happened. If you're going to have—there are three things that you have to—that property interest gives you. It gives you the right to a written, timely served complaint. Written, timely served, and signed complaint. The second thing it gives you, 614.023, Texas Government Code, the second thing it gives you is a right to have that complaint investigated. The third thing it gives you is the requirement to have that complaint be proven by evidence, established by evidence. There was no investigation by Precinct 6. There was any charge against—they depended upon HPD. HPD said, we've listened to the tape. There was nothing there. The second thing it gives you is a right to—or the third, is a right to have the complaint supported by the evidence. Judge Baker found that there was no support for any allegation that he had done anything wrong. Why are these people in that particular little network wanting to get Jose Amstutz, a guy who takes care of his kids and his family and who was simply trying to keep a job? It astounds me. It's—the appearance of justice was not there. Miller is all over this place. Mr. Watts, your time has expired. Thank you very much. Thank you.  God bless the Court.